on behalf of Mr. Gumesindo Mendoza-Moreno, I would like to reserve two minutes, please. All right. Statutes of limitations are a balancing decision by Congress to protect the fair rights of individuals to a fair trial and to promote the diligent prosecution of offenses. So just like with the offense of entry, when an alien affirmatively presents himself to immigration officials, we expect that those officials will use reasonable diligence in the protection of the public to assess that individual's status. And if they don't, this Court should hold, consistent with its sister circuits, that the government has five years to rectify its mistake, and if they fail to do so, then the government should bear the burden of the statute of limitations running against it. Now, with respect to the facts of this case, as the Eleventh Circuit found in Garcia and the government's own experts in this case state, that at or about the time that immigration officials approve an I-130 petition, they have a duty to search an individual's name. And using date of birth, Social Security, place of birth, to assess whether the individual has been previously deported, whether they have an A number. So this case ultimately is about what does it mean to search a name, and specifically who should bear the burden for the government's failure to catch its one-letter phonetic misspelling, particularly in light of the substantial policy favoring repose. My counsel is Judge Gould. If I can interject a question, please. Am I wrong in thinking that they did do a search of the name that was on his application? Yes, Your Honor. So as this case demonstrates, immigration officials out in the field, the agents have come up with creative misspellings of individuals' names in the field. They're foreign-sounding names. People are often illiterate. They don't speak English. The government knows that. The records are replete with phonetic misspellings. So they have built a basic safety net feature into their central database. Now, the government would have us believe that when an alien affirmatively presents himself to immigration officials and says, I'm living in this country, I came here illegally, that immigration officials routinely, willfully ignore the basic safety net feature that they've built into the system to catch the phonetic misspellings of their agents in the field. Now, that defies credibility. And I would note the government has the burden here to prove that it brought this case within the statute of limitations. None of its experts are willing to say that searching a name means literally searching just the exact letter combinations that an alien presents them and turning a blind eye to the basic safety net feature that they've built into the central database system. Now, we don't just have to use common sense here. We know that it is neither onerous or unusual to do a competent name search that produces the phonetic misspellings that immigration knows their agents make. And we can see that because within weeks of the second I-130 petition, immigration officials had done a competent name search which was producing the phonetic spellings of the individual's name. So we're not saying that immigration had to move with the haste that they did with respect to the second petition. But we are saying that within five years of getting the petition, which is when they approved it, they did have a duty to do a competent name search using the basic safety net features that they've built into their system to address the problem that they are very well aware of. And even if they didn't do it within five years, they had an additional ten years, and they're still outside the statute of limitations. So whatever reasonable diligence means, allowing immigration officials a decade to catch their own one-letter phonetic misspelling, I think particularly when here they had both the individual's date of birth, Social Security, place of birth, allowing them a decade to catch their own mistake I think is the bare minimum of reasonable diligence that we would expect of our immigration officials. If Congress's goal of promoting the diligent prosecution of offenses means anything at all, I think it has to mean that the statute of limitations should run against immigration and specifically the government in this case. Are there any additional questions? No. Thank you. Good morning, Your Honors. May it please the Court. Ross Pearson from the United States. Before I turn to why, legally, immigration officials aren't required by reasonable diligence to run similar name searches, I want to point out that the similar name search that was run in this case did not do what Mendoza-Moreno seems to assume it would have done in 2006. And what I mean by that is that in 2015, immigration officials ran a similar name search for the name Gumacindo with an R. It did not find the 2001 petition for Mendoza-Moreno's birth name, which was Gumacindo. And so there's a lot made about the fact that these were only one letter off, but there's no record that shows that if this search had been run in 2006, it actually would have found that he was deported in 1990 under the name Gumacindo with an R. And that's not because of spelling mistakes by immigration officials or his daughter or the State of California or the State of Nevada. It's because this 2001 case is an outlier. It's the only time until he was charged in this indictment that he actually used his birth name. Turning to why reasonable diligence doesn't require immigration officials to run these similar name searches, the courts that have defined the reasonable diligence standard say that it requires officials to run the searches they would normally run in processing an immigration petition. And in the record in this case, there are declarations from both experts who say immigration officials in screening I-130 petitions run searches for the name, date of birth, and country of origin. And in this case, that was done. It was done in 2015 when immigration officials ran the actual name Mendoza Moreno's daughter presented and found the exact match from his 1990 deportation. And it was also run in 2006 when immigration officials ran the exact names that Mendoza Moreno's brother presented, and because they had never been used before, they weren't able to find the 1990 deportation. And that's directly from this Court's — sorry, not this Court, the Eleventh Circuit's Palomino-Garcia case, which discusses the standard for reasonable diligence, what it's required. And it specifically says that I-130's standard is lower because it's just the first step in a lengthy process that will later include applications for a visa, later adjustment of status, and perhaps even fingerprints might be found. At the first stage of I-130's, it's only screening for the alien's birth relationship with the petitioner. So that was done in this case. The immigration officials in 2006 followed reasonable diligence that's required. And even if reasonable diligence does require a similar name search, there's no evidence in the record that that similar name search, if it had been run in 2006, would have worked. Counsel, could I interject a question? On this point, do I understand that you would say there is an obligation of the officials to use reasonable diligence, and if there's some constructive knowledge of a person's presence, then the statute would start to run? Our position is that the Court doesn't need to reach that issue here, because it's similar to the Zamudio case, where even if this Court decided to define what reasonable diligence means, it's not met in this case. If the Court did reach it, it would be our position that constructive knowledge would be required. Okay. Thank you. If the Court has no further issues, we would ask that you there is a circuit split on that issue, right? Yes, Your Honor. And this Court has suggested that it would follow the majority of circuits and apply a reasonable diligence standard. But, again, this case isn't the right case for the Court to decide, because even if the Court went down that road and defined reasonable diligence, under that definition, the definition that other courts have adopted, that standard would not be met here. Okay. Thank you. Thank you. Thank you. Thank you. There's only one name that has been used here. The reason there are multiple spellings of that name is the immigration official's phonetic misspelling of the name. And with respect to Garcia, Garcia, the government's correct, set forth a minimum standard. That minimum standard is that when the I-130 petition is approved, immigration officials have a duty to assess the individual status in this country by doing competent name searches. So figuring out whether someone has previously been deported has an A number, which is exactly what they did in Garcia, which wasn't done here. The government is That's cool. Let me just ask you to clarify something on the point you argue. You say this is a phonetic misspelling, but how is T-U-M-E-R and then the Sindo, how is it with the extra R added, like a phonetic misspelling? Gumasindo, Gumasindo. They sound very similar, which is why at Social Security, they also added an R. When we hear Gumasindo in this country, we hear an R. So Gumasindo with a Spanish accent, it sounds the same. And so it is a phonetic misspelling. It is very difficult to distinguish Gumasindo and Gumasindo. And so that's, it's understandable why both Social Security added an R, why immigration officials added an R. And that's why there's a safety net feature that is built into the system. The government wants to rely on the fact that they've produced one page of the results of the search. Now, we don't exactly know, we certainly know the end result, which we can look at ER-89, which is the text search done on 12-21-15, as well as SCR-15, the CSI printed on 2-12-2016. The government, specifically U.S.C.I.S., had linked Gumasindo and Gumasindo, birth date January 13th, 1963, Social Security ending in 2984, born in Michoacán, Mexico, and they linked the two A numbers. So we don't know exactly how the sausage was made, but we know that they had the means, the tools, and the duty. They didn't do that here. The government should bear the burden of the statute of limitations running against it in this case. Thank you. Thank both counsel for your argument this morning, United States versus Gumasindo, Mendoza-Moreno.
judges: McKeown, Gould, Lasnik